**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **ROBERT L. AGUON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-01864** |
| | ) | |
| **BARBARA RICKARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241. (Document No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Petition, the undersigned finds, and hereby respectfully recommends, that Petitioner's Petition be dismissed.

## PROCEDURAL HISTORY

**A.     Instant Section 2241 Petition:**

On March 14, 2017, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241.[1] (Civil Action No. 1:17-01950, Document No. 1.) In his Petition, Petitioner states that Incident Reports were issued against him on or about February 24, 2017, charging him with violating Offense Code 104, Possession of a Knife, and Offense Code

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

108, Possession of a Portable Telephone. (Id.) Petitioner complains that he has been held in segregation since the issuance of the Incident Reports on February 24, 2017, in violation of his Fifth Amendment right to due process. (Id.) Petitioner further complains that his is being denied counsel in violation of his Sixth Amendment rights concerning the upcoming prosecution regarding his alleged possession of a knife and cell phone as set forth in the Incident Reports. (Id.) As relief, Petitioner requests the following: (1) The Court order Petitioner's immediate release to general population; (2) The Court "order the AUSA to formally charge Petitioner or release the Incident Reports back to the institutional level so that resolution of Petitioner's Incident Reports can commence;" and (3) If Petitioner is formally charged, the Court immediately appoint counsel.[2] (Id.)

By Order entered on April 7, 2017, the undersigned ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Id., Document No. 9.) On April 27, 2017, Respondent filed his Response to the Order to Show Cause. (Id., Document No. 12.) Respondent argues that Petitioner's Petition should be denied because "Petitioner's challenge to the conditions of his confinement is not cognizable under 28 U.S.C. § 2241." (Id.)

On May 10, 2017, Petitioner filed his Reply and Affidavit in Support. (Id., Document Nos. 14 and 15.) Specifically, Petitioner argues that Respondent misconstrued Petitioner's Section 2241 Petition as challenging conditions of confinement. (Id.) Petitioner clarifies that he

---

[2] Petitioner has now been prosecuted for possession of a weapon and he was appointed counsel for such. Thus, Petitioner's requests that the United States' Attorney either prosecute him or release the incident back to the BOP for administrative processing and for the Court to appoint

is claiming that Respondent is holding him in segregation in violation of his procedural due process rights under the Fifth Amendment. (Id.)

**B.      Petition for Writ of Mandamus:**

On April 24, 2017, Petitioner, acting *pro se*, filed his Petition for Writ of Mandamus. (Civil Action No. 1:17-02507, Document No 1.) Petitioner explains that he was placed in segregation on February 24, 2017, based upon his alleged possession of a knife in violation of Offense Code 104 and a cell phone in violation of Offense Code 108. (Id.) Petitioner states that BOP disciplinary proceedings have been suspended due to his Incident Reports being referred to the U.S. Attorney's Office for possible prosecution. (Id.) Petitioner states he has been held in segregation since the issuance of the Incident Reports on February 24, 2017. (Id.) Petitioner complains that AUSA John File "has a history of holding Incident Reports submitted to his office for an average of four months, sometimes twice as long, [and] after the passage of at least four months, Mr. File then send a 'target letter.'" (Id.) Petitioner explains that the target letter informs the inmate that he is a target of a grand jury investigation and he has the right to testify before the grand jury. (Id.) Petitioner complains that AUSA File holds "these Incident Reports for as long as he chooses without any accountability for his accounts, all the while Petitioner, and similar situated inmates, are housed 'indefinitely' in segregation with the threat of prosecution looming over head." (Id.) Petitioner states that "these coercive and intimidation tactics serve to weaken the inmate's/petitioner's resolve thereby prompting the inmate/petitioner to accept Mr. File's plea offer and plead guilty to an Information just to 'get it over with' and move on to his still awaiting institutional proceedings so the inmate/petitioner can be released from segregation." (Id.) Petitioner contends that while AUSA File is "engaged in these unethical

counsel for such prosecution are moot.

and unorthodox practices," Petitioner is denied legal counsel in regards to his "pending prosecution." (Id.) Petitioner states that he "requested an attorney when he was read his *Miranda* rights and still hasn't been given access to any attorney." (Id.) Finally, Petitioner argues that his Eighth Amendment rights "are being violated due to the psychological damage he's suffered and continues to suffer due to the actions of Respondents." (Id.) As relief, Petitioner requests that the Court require the United States Attorney's Office and AUSA File to "abandon criminal proceedings against Petitioner for the Incident Reports mentioned herein above and immediately release said Incident Reports back to the Institution so that Petitioner's institutional proceedings may commence." (Id.)

By Proposed Findings and Recommendation entered this day, the undersigned has recommended that Petitioner's Petition for Writ of Mandamus be denied.

**C.  Criminal Action No. 1:17-00088:**

By letter dated April 28, 2017, the United States Attorney's Office notified Petitioner that he was a target of a grand jury investigation and that Petitioner had the right to appear before the grand jury. (Criminal Action No. 1:17-00088, Document No 1.) The target letter further notified Petitioner that if "you wish legal representation but feel you are unable to afford an attorney, you may call the Office of the United States Magistrate Judge . . . to determine if you are eligible to have an attorney appointed by the court to represent you." (Id.) By Memorandum Opinion and Order entered on May 1, 2017, the Court appointed counsel to represent Petitioner in Criminal Action No. 1:17-00088. (Id., Document No. 2.) On May 23, 2017, an Indictment was filed against Petitioner charging him with one count of Possession of a Prohibited Object by an Inmate of a Federal Prison, in violation of 18 U.S.C. §§ 1791(a)(2) and 1871(b)(3). (Id.,

Document No. 10.) On July 12, 2017, Petitioner pled guilty to the single-count Indictment. (Document No. 22, 23, and 24.) Petitioner is currently awaiting sentencing scheduled before the District Court. (Id., Document No. 25.)

## FACTUAL BACKGROUND

During a search conducted on February 24, 2017, prison staff at FCI McDowell discovered Petitioner to be in possession of a cellular phone, charging paraphernalia, and a homemade knife. (Civil Action No. 1:17-01864, Document No. 12, pp. 8 and 10.) On the same day, two Incident Reports were issued charging Petitioner with violating Prohibited Act Code 108, Possession of a Portable Telephone (Incident Report No. 2955244), and Prohibited Act Code 104, Possession of a Knife (Incident Report No. 2955246). (Id.) Petitioner was further notified via Memorandums dated February 24, 2017, that the Incident Reports were being referred to the Special Investigative Supervisor ["SIS"] and/or the Federal Bureau of Investigation ["FBI"], and thus, the institution's investigations and the Unit Discipline Committee hearings were suspended until the cases were released by the SIS or FBI. (Id., pp. 12 and 14.) Petitioner was placed in administrative detention in the Special Housing Unit on February 24, 2017, following the discovery of the prohibited objects. (Id., p. 16.)

## DISCUSSION

"Federal habeas corpus jurisdiction exists under 28 U.S.C. § 2241(c)(1) to review 'the complaint of a federal prisoner who is challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause.'" Varela v. Whalen, 946 F.2d 888 (4th Cir. 1991)(citing McNair v. McCune, 527 F.2d 874, 875 (4th Cir. 1975)(distinguishing between due process claims cognizable in

*habeas* proceedings and claims concerning conditions of confinement that are not cognizable in *habeas* proceedings). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); also see Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997)("In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by government action.").

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that inmates have a liberty interest in avoiding confinement

conditions that impose "atypical or significant hardship on the inmate in relations to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Recently, the Fourth Circuit determined that Sandin "does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." Prieto v. Clarke, 780 F.3d 245, 249 (4th Cir. 2015). Rather, the Fourth Circuit explained that inmates must *first* establish an interest in "avoiding onerous or restrict confinement conditions" arising from a policy or regulation (e.g. a policy or regulation mandating periodic review). Incumaa v. Stirling, 791 F.3d 517, 527 (4th Cir. 2017)(citing Prieto, 780 F.3d at 249). If the inmate can establish such an interest, the inmate must then establish that the conditions experienced by the inmate constituted atypical and significant hardship in relation to the ordinary incidents of prison life. Id. In the instant case, the undersigned finds that Petitioner can satisfy the first prong under Sandin because BOP regulation and policy mandate periodic reviews of segregation placement. 28 C.R.F. § 541.26;[3] Program Statement 5270.11; also see Incumaa, 791 F.3d at 527("Because there is uncontroverted evidence that the Department policy here mandates review of Appellant's security detention every 30 days, we have no trouble concluding that Appellant has met the first prong of his burden under *Sandin* and its progeny.").

Since Petitioner can satisfy the first prong under Sandin, the undersigned will consider

---

[3] Title 28 C.F.R. § 541.26 provides that an inmate's placement in the SHU will be reviewed by the Segregation Review Official ["SRO"] as follows: (a) Within three work days of the inmate's placement in administrative detention status, not counting the day the inmate was admitted, weekends, and holidays, the SRO will review the supporting records; (2) Within seven continuous calendar days of the inmate's placement in either administrative or disciplinary segregation, the SRO will formally review the inmate's status at a hearing the inmate can attend; (3) Subsequent reviews of the inmate's records will be performed in the inmate's absence by the SRO every seven continuous calendar days thereafter; and (4) After every 30 calendar days of continuous placement in either administrative or disciplinary segregation, the SRO will formally review the inmate's status at a hearing the inmate can attend.

whether Petitioner can establish that the conditions of confinement constitute atypical and significant hardship in relation to the ordinary incidents of prison life. A "fact specific" comparative exercise is required when determining whether confinement conditions are atypical and substantially harsh "in relation to the ordinarily incidents of prison life." Id. In Prieto, the Fourth Circuit determined that this Sandin standard contains two parts: (1) First, the Court must determine what constitutes the "ordinary incidents of prison life" for this particular inmate; and (2) Second, with that baseline established, the Court must determine whether the prison conditions impose atypical and substantial hardship in relation to that norm. Prieto, 780 F.3d at 253-54. Although general prison population is not always the basis for comparison, "general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." Incumaa, 791 F.3d at 527("[T]he 'baseline for atypicality' may shift depending on the 'prisoner's conviction and sentence.'")(citing Prieto, 780 F.3d at 253).

In the instant case, the undersigned finds that general population is the appropriate baseline as Petitioner was in general population before being placed in administrative segregation. Using general population as the baseline, the undersigned finds that Petitioner fails to allege conditions of confinement in segregation that satisfy the standard set forth in Sandin. In Beverati, the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit

indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

Beverati, 120 F.3d at 502. In contrast, the Supreme Court in Wilkinson determined that the following conditions at a supermax facility imposed an atypical and significant hardship under any plausible baseline:

. . . almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

Wilkinson, 545 U.S. at 223-24, 125 S.Ct. at 2394-95.

Although Petitioner appears to challenge the appropriateness for his placement in segregation, he does not complain that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in mainline population. Petitioner concludes that his mere placement in segregation "pending prosecution" constitutes an atypical and significant hardship. Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. See Beverati, 120 F.3d at 502. Although Petitioner appears to argue that his segregation placement is infinite in length, Petitioner acknowledges that his placement in administrative segregation is for the duration of his "pending prosecution" regarding his alleged possession of a weapon. At the time of filing of

his Petition, Petitioner acknowledged that he had only been in segregation for approximately one month. See Sandin, 515 U.S. at 487, 115 S.Ct. at 2302(The Court held that an inmate's confinement in disciplinary segregation for one month did not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life and thus did not establish a liberty interest sufficient to invoke a right to due process). Specifically, Petitioner was placed in segregation on February 24, 2017. The record further reveals that on July 12, 2017, Petitioner was convicted of Possession of a Prohibited Object by an Inmate of a Federal Prison, in violation of 18 U.S.C. §§ 1791(a)(2) and 1871(b)(3). (Criminal Action No. 1:17-00088, Document No. 10.) Thus, Petitioner's claim that his placement in segregation "pending prosecution" results in an indefinite placement is without merit. Petitioner's placement in segregation "pending prosecution" resulted in approximately five months placement. As for the conditions of segregation, Petitioner complains that he has restricted access to the law library. Petitioner claims that access to the law library is necessary based upon his "pending prosecution" and the lack of counsel. The record, however, reveals that Petitioner was appointed counsel on May 1, 2017, concerning his "pending prosecution." (Criminal Action No. 1:17-00088, Document No. 2.) Thus, the undersigned cannot find that Petitioner's restricted access to the law library constituted an atypical and significant hardship. Additionally, nothing in the record indicates that Petitioner's conditions of confinement in segregation were atypical or resulted in a significant hardship.[4] Thus, Petitioner's claim of a liberty interest in remaining free of segregation or in the

---

[4] Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. *See Hewitt v. Helms*, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Meachum v. Farno*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a

fact of his confinement in segregation is without merit. Since the facts underlying Petitioner's

Petition are insufficient to establish a protected liberty interest under the Due Process Clause, the

undersigned finds it unnecessary to consider what process was due to Petitioner. See Wilkinson,

545 U.S. at 221, 125 S.Ct. at 2393("We need reach the question of what process is due only if

the inmates establish a constitutionally protected liberty interest . . ."); Petway v. Lappin, 2008

WL 629998 (N.D.W.Va. March 5, 2008)(finding that plaintiff's "due process complaints

concerning either the misapplication of policy and procedures, or a lack of official rules and

regulations, must fail" because the inmate had no protected liberty interest in avoiding

segregated confinement"). Based on the foregoing, the undersigned respectfully recommends

that Petitioner's Petition be dismissed.

### PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**

that the District Court **DISMISS** Petitioner's Petition for Writ of *Habeas Corpus* under 28

U.S.C. § 2241 (Document No. 1) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is

hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge

David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have

---

liberty interest); and *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), citing *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution").

fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

ENTER: August 16, 2017.

Omar J. Aboulhosn
United States Magistrate Judge